**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**VICTORIA DIVISION**

| | | |
|---|---|---|
| **BAYSIDE-RICHARDSON CO-OPERATIVE GIN CO.**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**OCCUPATIONAL SAFETY & HEALTH REVIEW COMMISSION,**<br><br>**UNITED STATES DEPARTMENT OF LABOR,**<br><br>**JONATHAN L. SNARE in his official capacity of Commissioner and Chairman of the Occupational Safety & Health Review Commission, and**<br><br>**KEITH SONDERLING in his official capacity as Acting Secretary of Labor,**<br><br>*Defendants.* | § § § § § § § § § § § § § § § § § § § § § § § § § § | **CIVIL ACTION NO. _________** |

---

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

---

**INTRODUCTION**

1. Plaintiff Bayside-Richardson Co-operative Gin Co. ("Bayside") brings this case to challenge the unconstitutional structure and process employed by the Occupational

Safety and Health Review Commission ("OSHRC") to review a Citation issued by the Occupational Safety and Health Administration ("OSHA"), an agency of the United States Department of Labor ("DOL") as well as OSHA's authority to issue General Duty Clause citations under section 5(a)(1) of the Occupational Safety and Health Act of 1970, 29 U.S.C. §651, *et seq*. ("OSH Act"). In a series of recent opinions, the Supreme Court has applied the separation of powers doctrine and struck down unconstitutional agency structures. Despite the Supreme Court's clear pronouncements, Congress has failed to amend the OSH Act to bring OSHRC in compliance with the minimum constitutional requirements. As a result, Bayside is being denied its constitutionally guaranteed right to due process of law before a constitutionally adequate tribunal.

2. Specifically, OSHRC's review proceedings are unconstitutional and should be enjoined for the following reasons:

a. Because claims for civil penalties under the Section 5(a)(1) of the OSH Act are akin to common law claims, Bayside is entitled to trial by jury; OSHRC's mandate of a trial before an administrative law judge violates the Seventh Amendment. *See Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2120 (2024).

b. Multiple cases culminating with *Jarkesy* overruled *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442 (1977) and, therefore, Bayside is entitled to a trial by jury as to alleged violations of Section 5(a)(2) of the OSH Act.

c. The current scheme for the appointment of OSHRC's administrative law judges (29 U.S.C. § 661) violates the Appointments Clause in Article II of the United States Constitution. *See Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044 (2018); *Freytag v. Commissioner*, 501 U.S. 868, 915 (1991).

d. For cause removal of OSHRC Commissioners and administrative law judges violates the separation of powers doctrine. *See Space Exploration Technologies Corporation v. NLRB*, 151 F.4th 761, 766 (5th Cir. 2025) (hereinafter:

"*SpaceX*"); *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 216 (2020).

e. Because OSHRC lacks a quorum, any action it takes is *per se* invalid and divests the Circuit Courts of Appeals of jurisdiction to review its decisions, thereby denying Bayside its constitutionally guaranteed right to meaningful judicial review. *See New Process Steel v. N.L.R.B.*, 560 U.S. 674 (2010).

3. On March 9, 2026, OSHA issued Bayside one Citation alleging multiple violations of the OSH Act. *See* Exhibit 1 ("the Citation"). Bayside contested the Citation timely, and on April 30, 2026, the Acting Secretary of Labor filed his complaint before OSHRC. Bayside is prepared to defend itself against the Citation. However, OSHRC's current administrative review scheme denies Bayside its constitutionally guaranteed substantive and procedural protections. Therefore, Bayside brings this action to enjoin OSHRC and the DOL from prosecuting Bayside before a constitutionally deficient tribunal.

4. Furthermore, in issuing the Citation, the DOL through its Corpus Christi Area Director created a new regulatory requirements that it expects Bayside to adhere to. The Area Director asserts his authority under section 5(a)(1) of the OSH Act (a.k.a "the General Duty Clause"), which generally requires employers to provide a safe workplace but does not expressly put employers of notice as to how they should do so. The Area Director's efforts to legislate new and specific legal requirements for companies to follow under the guise of the General Duty Clause violates the nondelegation doctrine under Article I, section 1 of the U.S. Constitution as well as the Due Process Clause and should be declared unconstitutional.

## THE PARTIES

5. Established as a cooperative association in 1941, Plaintiff Bayside operates a cotton gin in Woodsboro, Texas. Bayside's cotton gin is classified as an Agricultural Industry business for purposes of the OSH Act. Cotton ginning is an essential element of cotton production. Cotton farmers rely on cotton ginners to remove seeds and other debris from raw cotton fibers, making the cotton usable for textile production and other applications. Cotton farmers in and around Refugio County, Texas rely on Bayside to perform this ginning operation. Without Bayside, cotton farmers would be required to haul their harvest significant distances at increased cost in order to prepare their cotton for market.

6. Defendant OSHRC is an independent administrative agency of the United States. Among other things, OSHRC is empowered to review citations issued by OSHA alleging a violation of the OSH Act. *See* 29 U.S.C. §659(c).

7. Defendant Jonathan L. Snare is the sole active OSHRC Commissioner and is sued in his official capacity as a Commissioner of OSHRC.

8. Defendant DOL is an agency of the United States. Roosevelt Shavers is the Area Director for OSHA's Corpus Christi office and is the agent of DOL who issued the underlying citation at issue in this lawsuit ("Shavers").

9. Defendant Keith Sonderling is the Acting Secretary of Labor and is sued in his official capacity ("the Secretary").

## JURISDICTION AND VENUE

10. This action arises under the Constitution and laws of the United States, and this Court has federal question jurisdiction over this action pursuant to Article III of the Constitution and 28 U.S.C. § 1331.

11. Bayside's right to immediate judicial review in this Court with respect to Defendants' alleged conduct is based on the Due Process Clause of the Fifth Amendment. The Court has authority to grant declaratory and injunctive relief under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and under the Court's inherent equitable powers. *See Axon Enter., Inc. v. Fed. Trade Comm'n*, 598 U.S. 175, 143 S. Ct. 890, 215 L. Ed. 2d 151 (2023); (statutory review does not displace district court federal question jurisdiction when adjudicating company's constitutional challenge to administrative agency); *SpaceX*, 151 F.4th at 766 ("[N]othing in federal law strips federal courts of jurisdiction … or to enjoin unconstitutional agency proceedings.")..

12. Venue is proper under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(b) because Defendants are officers of an agency of the United States and a substantial part of the harms arising from the underlying events and giving rise to this claim occurred in Refugio County at 1181 FM 1360 in Woodsboro, Texas.

## FACTS AND BACKGROUND

13. On or about September 10, 2025, a Bayside employee—called the Head Ginner—was working at Bayside's cotton gin. During the work, a seal failed on the ram

inside the ram hole. The ram hole is a subterranean area under the cotton gin where the ram resides. The purpose of the ram is to compress cotton to facilitate baling.

14. When the ram seal failed, the ram hole filled with oil. The Head Ginner along with multiple other workers on the site began bailing the oil from the ram hole using a rope and a five gallon bucket while standing on the floor of the gin—i.e., standing outside the ram hole. The reason for this action was to avoid exposing employees to the oil in the ram hole.

15. After a period of time, the Head Ginner decided to enter the ram hole to more quickly remove the oil. He planned to access the ram hole using a fiberglass ladder. The ginning supervisor told the Head Ginner to stop; that he did not have authority to enter the ram hole. Disregarding his supervisor's clear directive, the Head Ginner entered the ram hole anyway using the fiberglass ladder. During the entry, the fiberglass ladder failed and the Head Ginner fell into the oil—approximately 12-18 inches deep—and sustained burns to his feet and lower legs (the "the Accident").

16. Bayside reported the Accident to OSHA in a manner consistent with 29 C.F.R. § 1904.39.

17. OSHA subsequently initiated an inspection with which Bayside fully cooperated

18. On March 9, 2025, the DOL—by and through Shavers—issued Bayside the Citation alleging six serious violations:

a. Item 1: Section 5(a)(1) (also known as the "General Duty Clause") alleging the gin exposed employees to ***confined space hazards***. DOL proposed a penalty for this violation in the amount of $11,585.

b. Item 2: Section 5(a)(1) alleging the gin exposed employees to ***uncontrolled hazardous energy***. DOL proposed a penalty for this violation in the amount of $11,585.

c. Item 3: Section 5(a)(1) alleging the gin did not provide ***forklift training and certification*** for each employee operating forklifts. DOL proposed a penalty for this violation in the amount of $11,585.

d. Item 4: Section 5(a)(1) alleging employees used fiberglass ***ladders*** for improper purposes. DOL proposed a penalty for this violation in the amount of $11,585.

e. Item 5: 29 CFR 1910.157(c)(4) alleging portable fire extinguishers were not maintained in a fully charged and operable condition. DOL proposed a penalty for this violation in the amount of $11,585.

f. Item 6: 29 CFR 1910.1200(e)(1) alleging the employer did not develop and maintain a written hazardous communication program. DOL proposed a penalty for this violation in the amount of $11,585.

19. The total administrative penalty proposed by DOL in this case amounts to $69,510.

20. As described in more detail below, General Duty Clause citations are written by Area Directors when they cannot find an established OSH Act standard to apply to an

alleged violation. As it relates to the Agricultural Industry, DOL has enumerated limited standards that apply to operations like Bayside. Specifically, 29 CFR 1928.21[1]—Applicability of Standards in 29 CFR Part 1910—lists the standards from General Industry (codified under 29 C.F.R. Part 1910) that apply to agricultural operations (which are codified under 29 C.F.R. Part 28). The following standards are **not** included on the applicable standard list:

a. 29 CFR 1910.146—Confined Space;

b. 29 CFR 1910.147—Control of Hazardous Energy;

c. 29 CFR 1910.178—Powered Industrial Trucks, which includes forklifts, forklift training and certification; and

d. 29 CFR 1910.23—Ladders.

In writing the alleged violations as he did, Shavers attempts to bypass the administrative rulemaking process that excluded the Agricultural Industry from these standards, and he sought to do an end run by calling them General Duty Clause violations.[2]

21. To preserve its right to challenge the Citation, Bayside filed its timely Notice of Contest on March 12, 2026, in a manner consistent with 29 C.F.R. § 2200.33. The Secretary subsequently forwarded the Notice of Contest to OSHRC. OSHRC initiated a

---

[1] Originally adopted by the Assistant Secretary on April 19, 1973 at 29 C.F.R. §1910.267. 38 FR 10717. Subsequently, it was recodified as 29 C.F.R. §1928.21, under the Agriculture Standards, on April 25, 1975. 40 FR 18257.

[2] Even though Shavers did not convert it to a General Duty Clause violation, 29 CFR 1910.157 also is excluded from the applicable standards under 29 CFR 1928.21.

review proceeding and docketed the Notice of Contest. OSHRC assigned the proceeding docket number 26-0377.

22. Thereafter, Bayside participated in the OSHRC proceeding by taking defensive actions such as filing an Answer and attempting, unsuccessfully, to resolve the citation in an economically efficient manner without forcing Bayside or the Agricultural Industry to adopt new standards that were unconstitutionally promulgated (bypassing rulemaking procedures) by an agent of the DOL, *i.e.*, Shavers.

23. Unfortunately, the cost of continuing to defend itself against unjust citation items is too burdensome and expensive in the context of OSHA's unconstitutional administrative law structure, which can result in defense costs in excess of $100,000. That's an unreasonable exposure for small farm and ginning operations that operate on very narrow margins. Of course, it is that economic pressure that the government hopes to leverage in order to extort agreement to accept unconstitutional standards in the backrooms and alleys of OSHA enforcement. Accordingly, Bayside prays this Court will enjoin the administrative proceedings and protect it from further governmental abuse.

## SUMMARY OF ALLEGATIONS

24. OSHRC's current administrative review scheme denies Bayside its constitutionally guaranteed substantive and procedural protections. Therefore, Bayside demands a trial by jury or, in the alternative, a trial by an arbiter appointed in a manner consistent with Article III of the United States Constitution.

25. Declaratory and injunctive relief is necessary to prevent Bayside from being compelled to submit to an unconstitutional proceeding and from suffering further

irreparable professional, reputational, and financial harm, all without constitutionally sufficient meaningful judicial review. Indeed, as the Fifth Circuit recently recited, "The here-and-now injury of being subjected to unconstitutional agency authority … is irreparable." *SpaceX,* 151 F.4th at 780.

26. If the current unconstitutional administrative proceeding results in adverse findings against Bayside, the administrative law judge's and/or OSHRC's findings would be given substantial deference, entrenching the harm caused by OSHRC's unconstitutional proceedings.

27. Without the requested declaratory and injunctive relief, Bayside will suffer irreparable harm by being forced to undergo an expensive, time-consuming, reputation-destroying, unconstitutional proceeding. Limited judicial review after that unconstitutional proceeding cannot and does not provide meaningful relief for the constitutional violations at issue in this manner. *See SpaceX,* 151 F.4th at 781 (recognizing "an injury that, once inflicted, cannot be undone").

## OSHRC'S UNCONSTITUTIONAL STRUCTURE

28. Subject to Fourth Amendment limitations, the OSH Act expressly authorizes the Secretary of Labor or his or her authorized representative to enter, inspect and investigate workplaces, interview employees and managers, and obtain and review records and documents. 29 U.S.C. § 657.

29. If, following the inspection, the Secretary or his or her authorized representative believes an employer has violated the OSH Act, the DOL can issue citation(s). 29 U.S.C. § 658.

30. Following the receipt of a notice of a Citation, an employer has fifteen working days to contest the Citation by notifying the Secretary that it wishes to contest the Citation. 29 U.S.C. § 659. During those fifteen business days, employers and OSHA frequently engage in an Informal Conference, which is an attempt to resolve, or settle, the allegations set forth in the Citation. 29 C.F.R. § 1903.20.

31. Following the receipt of a Notice of Contest, the Secretary must immediately notify OSHRC which shall afford the employer a hearing in accordance with 5 U.S.C. § 554. 29 U.S.C. § 659(c).

32. Employer contests are heard by an administrative law judge appointed by the OSHRC who makes a determination and provides a report of his or her determination to OSHRC. 29 U.S.C. § 661(j). The Administrative Law Judge's report becomes a final order of OSHRC unless, within 30 days after the report is issued, any OSHRC Commissioner directs that the report be reviewed by the Commission. *Id.* Final OSHRC orders are subject to limited judicial review by the Circuit Courts of Appeals and/or the United States Supreme Court. 29 U.S.C. § 660.

33. OSHRC is intended to be composed of three Commissioners appointed by the President with the advice and consent of the Senate. Commissioners serve six-year terms. 29 U.S.C. § 660(a). OSHRC Commissioners may only be removed by the President for "Inefficiency, neglect of duty, or malfeasance in office." *Id.* at 660(b). OSHRC may only act when a two-member quorum is present. *Id* at 661(f).

34. The Chairman of OSHRC appoints Administrative Law Judges. *Id.* at 661(e). Administrative Law Judges are subject to civil service rules that limit their ability to be removed. *Id.* at 661(k).

35. OSHRC's Administrative Law Judges do not preside over jury trials.

## A. OSHRC's Review Structure Violates Bayside's Seventh Amendment Right to Trial by Jury.

36. The Seventh Amendment to the United States Constitution Provides:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law. U.S. Const. amend VII.

37. The Supreme Court has interpreted the Seventh Amendment's operative phrase "Suits at common law" as requiring a jury trial in those civil cases that would have required one in the courts of England in 1791 - the year the Seventh Amendment was ratified. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 376, (1996) (discussing "our longstanding adherence to this 'historical test'"); *Dimick v. Schiedt*, 293 U.S. 474, 476 (1935); *United States v. Wonson*, 28 F. Cas. 745, 750 (C.C.D. Mass. 1812) (No. 16,750). Generally, this determination hinges on whether a claim pursues vindication of legal rather than equitable rights. This includes statutory claims that did not exist in 1791 where the statute provides for rights and remedies analogous to those that existed at common law or where the newly created cause of action "serves the same essential function" of a historical common law action. *Pernell v. Southall Realty*, 416 U.S. 363, 375 (1974).

38. Tort claims, such as negligence, are legal actions. *See City of Monterey v. Del Monte Dunes*, 526 U.S. 687, 710 (stating that the Seventh Amendment covers all actions that "sound basically in tort"). Likewise, "[a] civil penalty was a type of remedy at common law that could only be enforced in courts of law. *Tull v. United States*, 481 U.S. 412, 422 (1987); *Texas Tobacco Barn, LLC v. U.S. Dept. of Health and Human Svcs*., 180 F.4th 229, 234 (June 30, 2026) ("The civil monetary penalty imposed on [the employer] is the prototypical common law remedy.").

39. However, when Congress concludes that the remedies available in courts of law are inadequate to cope with a problem within Congress' power to regulate, Congress may create new "public rights" and remedies by statute and commit the enforcement of these "public rights" to agencies. *Atlas Roofing Co., Inc. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442 (1977). Still, the "public rights" exception to the Seventh Amendment does not apply to a novel statutory regime where "the statutory claims are akin to common law claims." *Sec. & Exch. Comm'n v. Jarkesy*, 144 S. Ct. 2117, 2139 (2024).

40. The General Duty Clause of the OSH Act Section 5(a)(1) - provides: each employer "shall furnish to each of his employees employment and a place of employment which are free from recognized hazards that are causing or are likely to cause death or serious physical harm to his employees." 29 U.S.C. §654(a)(1). The General Duty Clause in essence is a codification of common law negligence. *See Markut v. Verizon N.Y. Inc. (In re World Trade Ctr. Lower Manhattan Disaster Site Litig.)*, 758 F.3d 202, 210 (2d Cir. 2014) ("Codifying common law negligence, New York Labor Law § 200 provides for a general duty to protect the health and safety of employees."). To the extent *Atlas Roofing*

is still good law, the decision is not controlling as to the alleged General Duty Clause violations set forth in the Citation.

41. Additionally, and in the alternative, the Supreme Court's decision in *Jarkesy* overruled *Atlas Roofing* and abrogated the "public rights" exception to the Seventh Amendment. Therefore, because this action arises out of the government's attempt to enforce a civil penalty, Bayside is entitled to trial by jury.

**B. OSHRC's Appointment of Administrative Law Judges is Unconstitutional.**

42. The Appointments Clause in Article II of the United States Constitution reads as follows:

> "[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. CONST., Art. II, § 2, cl. 2.

43. "The Appointments Clause of Article II is more than a matter of etiquette or protocol." *Edmond v. United States*, 520 U.S. 651, 659 (1997).

44. The OSH Act treats Administrative Law Judges as inferior officers whose appointment does not require the advice and consent of Senate. 29 U.S.C. § 661. However, the provision violates the Appointments Clause because the Administrative Law Judges are not appointed by one of the "Heads of Departments."

45. OSHRC's Administrative Law Judges are inferior officers. *Lucia v. Sec. & Exch. Comm'n*, 138 S. Ct. 2044 (2018). Therefore, they must be appointed by the "Head"

of a Department. U.S. CONST., Art. II, § 2, cl. 2. In the instant case, Congress vested the Chairman of OSHRC with the authority to appoint Administrative Law Judges. 29 U.S.C. § 661(e). However, the Chairman is not one of the "Heads of Departments" for two reasons. First, OSHRC is not "like Cabinet-level department" and therefore, is not a "Department" for purposes of the Appointments Clause. *See Freytag v. Commissioner*, 501 U.S. 868, 915 (1991). Because OSHRC is not a "Department," the Chairman does not qualify as one of the "Heads of the Department" envisioned by the Appointment Clause, and Congress' decision to vest the Chairman with the authority to appoint administrative law judges is unconstitutional. Second, assuming arguendo OSHRC is a "Department" for purposes of the Appointments Clause, the Chairman is not the "Head" of that department. Instead, all three OSHRC Commissioners acting collectively are the "Head" of the department and vesting appointment authority in the Chairman alone violates the Appointments Clause.

**C. For Cause Removal of OSHRC Commissioners and Administrative Law Judges Violates Separation of Powers.**

46. "The power to remove inferior executive officers, like that to remove superior executive officers, is an incident of the power to appoint them, and is in its nature an executive power." *Myers v. United States*, 272 U.S. 52, 161 (1926). "Since 1789, the Constitution has been understood to empower the President to keep these officers accountable - by removing them from office, if necessary." *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 483 (2010). Thus, limiting the President's power to remove principal offers generally runs afoul of Article II of the United States

Constitution. *See* U.S. CONST. Art. II, §§ 1, 3 ("The executive Power shall be vested in a President of the United States of America," who must "take Care that the Laws be faithfully executed.").

47. In establishing OSHRC, Congress limited the President's authority to remove Commissioners providing that they could only be removed for "inefficiency, neglect of duty, or malfeasance in office." 29 U.S.C. § 661(b). This limitation on Presidential power is unconstitutional.

48. Like Commissioners, OSHRC's administrative law judges are subject only to "for cause" removal. *See* 29 U.S.C. § 661(k). However, the administrative law judges serve sufficiently important executive functions such that the restriction on their removal takes away the President's ability to take care that the laws are faithfully executed. *See Jarkesy v. SEC*, 34 F.4th 446 (5th Cir. 2022), *aff'd on other grounds*, 144 S.Ct. 2117 (June 27, 2024); *see also SpaceX*, 151 F.4th at 767 ("ALJs are inferior officers insulated by two layers of for-cause removal protection—an arrangement the Supreme Court and this circuit have both held unconstitutional.").

**D. OSHRC's Lack of Quorum Denies Bayside its Right to Due Process of Law.**

49. The Fifth Amendment to the United States Constitution provides "No person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend V.

50. The due process clause guarantees, that at a minimum, a party is entitled to the opportunity to be heard "at a <u>meaningful</u> time and in a <u>meaningful</u> manner." *Barry v.*

*Barchi*, 443 U.S. 55, 66 (1979) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965) (emphasis added).

51. The failure of an agency to comply with the procedural safeguards promulgated by Congress constitutes arbitrary and capricious conduct that denies a party it's constitutionally guaranteed right to due process of law. *See Accardi v. Shaughnessy,* 347 U.S. 260 (1954) (holding that Attorney General's decision to exercise discretionary authority to deport an alien before the case was reviewed by the Board of Immigration Appeals violated the due process clause).

52. By statute, the OSHRC is composed of three members appointed by the President with the advice and consent of the Senate. 29 U.S.C. § 661(a). For the purpose of carrying out its functions, two members of OSHRC shall constitute a quorum and official action can be taken only on the affirmative vote of at least two members. 29 U.S.C.A. § 661(b).

53. The administrative review process, mandated by statute, begins with a hearing before an Administrative Law Judge appointed by OSHRC's Chairperson. 29 U.S.C. § 661(j). The Administrative Law Judge makes a determination and reports his or her determination to OSHRC. *Id.* The report of the Administrative Law Judge becomes the final order of OSHRC within thirty days of the report, unless an OSHRC Commissioner directs that the report be reviewed. *Id.*

54. Final orders, and only final orders, of OSHRC are subject to review in the United States Courts of Appeals if a party files a petition for review within sixty (60) days of OSHRC's Order. 29 U.S.C. § 660(a).

55. Currently, Jonathan L. Snare is the only duly appointed Commissioner at OSHRC. Thus, it is undisputed that OSHRC does not have a quorum and, therefore, cannot act. Because OSHRC cannot act, it cannot issue final orders vesting the United States Courts of Appeals with jurisdiction to review.

56. Because OSHRC lacks a quorum, any action it takes is *per se* invalid and divests the Courts of jurisdiction to review its decisions, thereby denying Bayside it's constitutionally guaranteed right to <u>meaningful</u> judicial review. *See New Process Steel v. N.L.R.B.*, 560 U.S. 674 (2010).

**CAUSE OF ACTION I**
**(Declaratory Judgment and Injunctive Relief)**

57. Bayside restates and incorporates by reference each and every allegation of the preceding paragraphs.

58. An actual case and controversy exists within this Court's jurisdiction and, therefore, the Court may declare the rights and other legal relations amongst the parties.

59. OSHRC's ongoing review proceeding against Bayside is unconstitutional because: (1) it denies Bayside its Seventh Amendment right to a trial by jury as to claims for civil penalties where the statutory claims are akin to common law claims; (2) OSHRC's administrative law judges are not appointed by the "Head" of a "Department" in violation of the Appointments Clause in Article II of the United States Constitution; (3) "for cause" removal of OSHRC Commissioners and administrative law judges unduly restricts the President's ability to take care that the laws are faithfully executed; and (4) OSHRC's lack of quorum divests the Circuit Courts of Appeals of jurisdiction to review its decisions,

thereby denying Bayside it's constitutionally guaranteed right to meaningful judicial review.

60. Without injunctive relief from this Court, Bayside will be required to submit to an unconstitutional proceeding. This in and of itself constitutes irreparable harm to Bayside unless OSHRC and the DOL are enjoined.

61. Furthermore, if OSHRC, upon recommendation from the Administrative Law Judge, finds against Bayside, the harm to Bayside will be severe and irremediable.

62. OSHRC's conduct has caused and will continue to cause Bayside to suffer immediate and irreparable harm by annulling its Constitutional right to Due Process. No money damages can remedy this harm. Moreover, OSHRC's administrative proceeding is not speculative; it is currently happening.

63. Bayside has a substantial likelihood of success on the merits of its claims. The harm to Bayside far outweighs the harm, or even inconvenience, to OSHRC and the DOL, if such relief is granted. Finally, the grant of an injunction will serve the public interest by protecting Americans' constitutional rights.

**CAUSE OF ACTION II**
**(Declaratory Judgment—General Duty Clause Violations)**

64. When it passed the OSH Act, Congress delegated to the Secretary the authority to set workplace safety standards under 29 U.S.C. 655(b). Adopting regulations is a multistep procedure outlined by OSHA's Rules of Procedure for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. 29 C.F.R. §§ 1911.1-1911.18. Specifically, the procedure for adopting new safety standards generally requires

(1) a written petition for the promulgation of a new rule to be filed with the Assistant Secretary of Labor; (2) research regarding the alleged hazard in the industry and evaluation of data collected; (3) drafting and proposal of a new rule that includes public announcement of a Notice of Proposed Rulemaking; (4) public comments and hearings on the proposed rule; (5) review and amendment to the new rule based on public comments and hearings; and (6) final adoption of the rule. *Id*.

65. Allowing OSHA or any of its agents, like Shavers, to unilaterally create new standards on the fly and at the drop of a hat violates the bar against the Legislative Branch's delegation of law making authority. The Constitution provides that all legislative powers are vested in Congress. U.S. Const. art. I, § 1. Although Congress may allow agencies to flesh out the statutory scheme by adopting regulations, that delegation is strictly limited. *See Dep't of Transp. V. Ass'n of Am. Railroads*, 575 U.S. 43, 67, 68 (2015) (Thomas, J., concurring) (while "these grants are exclusive … only the vested recipient of that power can perform it."). In this case, the safety standards delegation authorizes the Secretary to promulgate rules. 29 U.S.C. § 655(b). And the Secretary follows specific procedures when adopting those rules. 29 C.F.R. §§ 1911.1-1911.18. Congress's delegation does not authorize an Area Director to bypass these procedures—procedures that are designed largely to protect employer's Constitutional rights—by identifying an employer practice that the Area Director doesn't like and then deciding how they can punish that employer with a citation and civil penalty after the fact.

66. Each of the General Duty Clause violations written by Shavers also failed to adhere to any of the due process protections established by OSHA's Rules of Procedure

for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. Moreover, each alleged General Duty Clause violation is as onerous or more onerous than the standards adopted and applied to General Industry—*i.e.*, where OSHA actually promulgated the rules in accordance with its Rules of Procedure that General Industry companies must follow. For example:

a. Item 1 (Exhibit 1) lists ANSI/ASSE Z117.1-2009—among other requirements—as abatement to correct the alleged violation related to confined space. ANSI/ASSE Z117.1-2009 is more onerous than the confined space standard adopted by the Secretary under 29 C.F.R. §1910.146 that followed OSHA's Rules of Procedure for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. The ANSI standard includes all the same requirements and more, spanning over 60 pages of compliance requirements. In contrast, the confined space standard at 29 C.F.R. §1910.146 is only 15 pages in length with significantly fewer requirements.

b. Item 2 (Exhibit 1) lists ANSI/ASSE Z244.1-2003 (R2008) as one of the abatement items to correct the alleged violation related to uncontrolled hazardous energy. ANSI/ASSE Z244.1-2003 (R2008) is more onerous than the hazardous energy standard adopted by the Secretary under 29 C.F.R. §1910.147 that followed OSHA's Rules of Procedure for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. The ANSI standard includes all the same requirements and more, containing 58 pages of compliance requirements. In

contrast, the hazardous energy standard at 29 C.F.R. §1910.147 is only 11 pages in length with significantly fewer requirements.

c. Item 3 (Exhibit 1) lists ANSI/ITSDF B56.1-2012 as appropriate abatement to correct the alleged violation related to forklifts. ANSI/ASSE ANSI/ITSDF B56.1-2012 is more onerous than the powered industrial truck standard adopted by the Secretary under 29 C.F.R. §1910.178 that followed OSHA's Rules of Procedure for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. The ANSI standard includes all the same requirements and more, containing 65 pages of compliance requirements. In contrast, the forklift standard at 29 C.F.R. §1910.178 is only 14 pages in length with significantly fewer requirements.

d. Item 4 (Exhibit 1) lists ANSI-ASC A14.2-2017 as one of several abatement requirements to correct the alleged violation related to ladders. ANSI-ASC A14.2-2017 is more onerous than the ladder standard adopted by the Secretary under 29 C.F.R. §1910.23 that followed OSHA's Rules of Procedure for Promulgating, Modifying, or Revoking Occupational Safety or Health Standards. The ANSI standard includes all the same requirements and more, containing 91 pages of compliance requirements. In contrast, the ladder standard at 29 C.F.R. §1910.23 is only nine pages in length with significantly fewer requirements.

67. Bayside did not receive notice it was required to follow any of these standards. In fact, it affirmatively believed it was expressly exempted from following these standards because the Secretary specifically excluded them from the list of General

Industry standards Agricultural Industry employers are required to follow. *See* 29 C.F.R. §1928.21(b):

> Except to the extent specified in paragraph (a) of this section, the standards contained in subparts B through T and subpart Z of part 1910 of this title do not apply to agricultural operations. [29 C.F.R. § 1910.23 is in Subpart D; 29 C.F.R. §§ 1910.146 and 1910.147 are in Subpart J; and 29 C.F.R. § 1910.178 is in Subpart N.]

68. Because Bayside wasn't provided with fair notice that these standards would be applied to it—albeit disguised as General Duty Clause violations—it was deprived of due process. "Due process requires that parties received fair notice before being deprived of property." *General Electric Co. v. U.S. Environmental Protection Agency*, 53 F.3d 1324, 1328 (D.C. Cir. 1995) (citing *Milane v. Central Hanover Bank & Trust Co*., 339 U.S. 306 (1950)). "The due process clause thus 'prevents deference from validating the application of a regulation that failed to give fair warning of the conduct it prohibits or requires.'" *Id.* (citing *Gates & Fox Co. v. OSHRC*, 790 F.2d 154, 156 (D.C. Cir. 1986)). When considering the application of OSHA standards, federal courts have held that "[i]f, by reviewing the regulations and other public statements issued by the agency, a regulated party acting in good faith would be able to identify, with 'ascertainable certainty,' the standard with which the agency expects parties to conform, then the agency has fairly notified petition of the agency's interpretation." *Id.* (citing *Diamond Roofing Co.* 528 F.2d at 649). However, where an agency provides no pre-enforcement warning and instead announces its interpretation for the first time by issuing a citation, "the decision to use a citation as the initial means for announcing a particular interpretation may bear on the adequacy of notice to regulated parties." *Martin v. OSHRC*, 499 U.S. 144, 158

(1991). Here, OSHA provided no pre-enforcement warning that the standards were applicable to the cotton gin or American farmers in general.

69. Moreover, there is no evidence in the record that the hazard for which the company was cited is a recognized hazard for agricultural operations. The cited standards are contained in the General Industry standards, not the Agricultural standards. There is no evidence that the cotton ginning industry has adopted the General Industry standards.

70. Furthermore, the Secretary's citation of Bayside under the General Duty Clause is improper because it is pre-empted by more specific standards, even if those standards do not apply to Bayside. That is, as a matter of law, the General Duty Clause does not apply to a failure to prevent a hazard "if a standard specifically addresses the hazard cited." *Active Oil Serv., Inc.*, 21 O.S.H. Cas. (BNA) 1184 (No. 00-0553, 2005), 2005 WL 3934873, at *2. The alleged violations cited by the Secretary are expressly set forth in 29 C.F.R. §§ 1910.23, 1910.146, 1910.147, and 1910.178. these standards are not incorporated into the agricultural standards because they are not listed in 29 C.F.R. § 1928.21(a). Here, Shavers—as an agent of DOL—is attempting to use the General Duty Clause to update a specific standard, or more aptly, apply a specific standard to Bayside without the required procedural safeguards. The Secretary has already promulgated safety standards that address the hazards stated in the Citation. However, when the Secretary adopted those standards, they were specifically excluded from the list of general industry standards found in 29 C.F.R. § 1928.21(a) and, as a result, these standards do not apply to agricultural operations, and the Secretary by and through its agent cannot use the General Duty Clause as an end-run around the required procedures for adopting standards.

71. Again, Bayside received no notice that OSHA would attempt to apply General Industry standards to it under the guise of General Duty Clause violations when the violations alleged by Shavers are codified under General Industry and exempted under the Agricultural Industry standards.

72. Bayside asks this Court to issue a declaratory order finding the Defendants lack authority under the Constitution to promulgate regulations without providing constitutional notice or by following the Secretary's own rules for promulgation of safety standards.

73. While Bayside asks the Court for this relief, at the same time, it prays the President of the United States will show his continued support for the American farmer by issuing an Executive Order banning OSHA's abusive use of the General Duty Clause to unconstitutionally promulgate standards without notice and without regard to the devastating financial impact such abusive conduct imposes on America's quintessential industry.

## PRAYER FOR RELIEF

WHEREFORE, Bayside-Richardson Co-operative Gin Co. respectfully request that this Court enter judgment in its favor and against Defendants as follows:

a. Declare that Bayside is entitled to trial by jury;

b. Declare that OSHRC's structure is unconstitutional;

c. Declare that OSHRC's administrative adjudication procedures are unconstitutional;

d. Enjoin Defendants from continuing administrative enforcement actions against Bayside;

e. Declare DOL and the Secretary lack authority to promulgate safety standards through an Area Director who did not follow OSHA's own promulgation rules;

f. Award Bayside its reasonable attorneys' fees and costs incurred in bringing this action; and

g. Award such other and further relief the Court deems just and proper.

Respectfully submitted,

**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C**

/s/ *Frank Davis*

Frank Davis
Federal Bar No.: 727185
Texas Bar No.: 24031992
8117 Preston Road, Suite 500
Dallas, Texas 75225
Telephone: 214.987.3892
Facsimile: 214.987.3892
frank.davis@ogletree.com

Ryan Swink
Federal Bar No.: 3631019
Texas Bar No.: 24107940
One Allen Center
500 Dallas, Suite 2100
Houston, Texas 77002
Telephone: 713.655.0855
Facsimile: 713.655.0020 (Fax)
ryan.swink@ogletreedeakins.com

***Counsel for Plaintiff Bayside-Richardson Co-operative Gin Co.***